Ezekiel Parsons, Plaintiff in Error, *v.* William Overmire, Defendant in Error.

### ERROR TO MARSHALL.

Where A. and B. cultivate a farm jointly, A. furnishing a horse, harness, etc., and B. a horse, for their joint use, and B., on being arrested on a criminal charge, tells A. to take his horse home, that he, A., would be back in a few days, and B. does so, afterwards using and claiming the horse as his own ; this is a sufficient delivery from B. to A. to enable the former to keep the horse, as against other creditors of B.

This was an action of replevin in the *detinet.* Issues—*non detinet ;* property not plaintiff's ; property defendant's, not plaintiff's. Verdict for defendant. Motion for new trial overruled.

*John Webster,* being sworn, testified that he was acquainted with the plaintiff and with James Shinn ; that during the month of February, 1854, the plaintiff and said James Shinn both lived on a farm, in Marshall county, belonging to the witness ; that

about the first of February in said year, witness sold to said
James Shinn the mare in controversy in this suit; that at the
time, said Shinn owned and had the harness in controversy; that
the witness had a conversation with James Shinn, in which wit-
ness asked said Shinn if he had given the plaintiff a mortgage
to secure his debt; that Shinn said he had not given a written
mortgage, but that he had turned out the mare and harness to
the plaintiff for him to hold until his debt was paid; that Shinn
also said at the same time that he owed Parsons over a hundred
dollars, and that Parsons was to hold the mare and harness until
it was paid.   Witness further testified, that said Parsons and
Shinn, had taken and were to work witness' farm for that year
jointly; that said Parsons had furnished one horse, and said
Shinn had furnished the mare in controversy; that they had
kept the two together to make a team, and had used, and had
intended to use, the team for the mutual benefit of both; that
from ·the time of the conversation between witness and Shinn,
until the trial, when the mare was afterwards taken from Parsons
by Gore, witness had always heard Parsons speak of the mare
as his; that he always claimed her; that witness had heard
Parsons call the mare his in Shinn's presence, and Shinn made
no answer; that during that period, witness saw both Parsons
and Shinn use the team.   Witness further testified, that he had
heard both Parsons and Shinn state that Shinn owed Parsons
over one hundred dollars; that Parsons used the mare as his
own.   Said witness further testified, that some time in the month
of March, 1854, Parsons and Shinn and witness went together
in a wagon to a sale; that the said team was driven before the
wagon, and driven by Parsons, to the sale; that at the sale,
Shinn killed one Orgon, and was arrested and taken off; that
he did not return with Parsons and the witness; that Parsons
drove the said team home; that from that time to the time when
the mare and harness in controversy were taken from Parsons by
Gore, Parsons was in the actual possession of said mare and har-
ness, claiming title to the same and calling them his own; that
Shinn never came back; that before and after his suit commenc-
ing with Shinn, when Parsons desired he took the team and used
it, and that Shinn also used it whenever he desired; that he saw
no difference in the use of said team; that witness, during the
whole of said February and March, lived in the same house with
Shinn and Parsons; the 1st of February, Shinn bought the mare
of him and paid for her; that after Shinn was arrested, witness
saw notes made by Shinn in favor of Parsons, in Parsons' pos-
session, for more than one hundred dollars; that the notes bore
date four to six weeks prior to the time witness saw them.

Another witness testified, that in the month of March, 1854, before the defendant, Overmire, purchased the mare and harness in controversy, the witness, as agent for and at the request of plaintiff, notified defendant that plaintiff claimed said property, and would replevy the same ; that after said defendant had purchased said property and before the commencement of this suit, the witness, as agent for and at the request of plaintiff, demanded the property in controversy from the defendant, and that he refused to deliver the same.

Another witness testified, that at the request of S. L. Richmond and Mark Bangs, he went from Lacon towards the place where Parsons lived, after the property in controversy ; that he met Parsons on the way, driving the mare in controversy, with another horse, before a two-horse wagon ; that he had an execution against said Parsons, and proceeded to levy the same upon the other horse ; that witness also took the mare and harness in controversy, but against the will and consent of Parsons ; that he took the property in controversy to Lacon, and delivered the same to Bangs.

The defendant introduced a witness, who testified that shortly after Shinn bought the mare in controversy from Webster, witness applied to Shinn to purchase said mare ; that Shinn informed him that Parsons had a claim on her, and she could not be sold except by Parsons' permission ; that Parsons said, if witness wanted to buy her, to buy her, and he would not object.

The defendant then called *Mark Bangs*, who testified that he had an interest in the event of the suit ; that he had no notice of Parsons' claim on the property in controversy, at the time of his purchase of it ; that he had sold out his interest in the property to Richmond.

The plaintiff consented that Bangs might testify, waiving all objections to his competency.

The seventh instruction for plaintiff, refused by the court, and to which refusal plaintiff excepted, is as follows :

If it was agreed between Shinn and Parsons, that the mare and harness should be considered in the possession of Parsons, as a matter of security for debt, then during the existence of such agreement, as between Shinn and Parsons, the possession of such property would be deemed to be in Parsons, although he may have permitted Shinn to have used the property from time to time, and although they may have used the property jointly.

The court, at the request of defendant, gave the following instructions, to which, among others, plaintiff excepted :

2. Even if the jury believe, from the evidence, that Shinn agreed that Parsons might have security on the mare to secure him (Parsons) in a debt that Shinn owed to Parsons, yet if the

jury at the same time believe, from the evidence, that the mare was not delivered by Shinn to Parsons under such an arrangement between them, then any such an arrangement is void in law, as to the purchasers of Shinn, without notice of Parsons' right.

3. If the jury believe, from the evidence, that such an arrangement was made between Shinn and Parsons, as is mentioned in the second instruction, and that the mare was not put into possession of plaintiff under such an arrangement; and if the jury further believe, that Shinn sold the mare to Bangs and Richmond, and that Richmond and Bangs afterwards sold the mare to Overmire; then the jury ought to find for the defendant, unless he had notice of Parsons' claim before the sale to him.

6. If the jury find for the defendant, then the plaintiff is entitled to recover damages for the detention of the property from the time this suit was brought, until the present term; and if the jury find for the defendant, they will assess such damages at what the proof shows the use of the mare and harness were worth for such time.

The errors assigned are: Judgment and verdict should have been for plaintiff, and not for defendant; refusing plaintiff's seventh instruction; giving instructions for defendant; and overruling motion for new trial.

Leland & Leland, for Plaintiff in Error.

S. L. Richmond, for Defendant in Error.

Caton, C. J. If the testimony of Webster is to be relied upon, then there is no avoiding the conclusion that both the mare and harness in controversy, were pledged by Shinn to Parsons, to secure a debt which the former owed the latter, and that the possession of the articles was delivered by the pledgor to the pledgee, and retained by him, till they were wrongfully taken from him by Gore. This possession is most seriously questioned in the argument for the defendant in error, and requires to be particularly noticed. Both Shinn and Parsons had rented a farm together, which they worked jointly. Shinn owned the mare and harness in question, and Parsons a horse, which they worked together as forming one team in the joint cultivation of the farm. In this condition of affairs the pledge was made, after which, both the mare and harness were claimed by Parsons as his property in the presence of Shinn, who made no question or denial of such claim. Indeed the witness swears, that Parsons always claimed the property as his own and used it as such. Sometimes one drove the team in the prosecution

of the work on the farm, and sometimes the other. While affairs were in this position, the witness, Parsons and Shinn, went in a wagon with this team to a public sale, Parsons driving. At the sale, Shinn committed a homicide, for which he was arrested, when he told Parsons to take the mare home and take care of her; that he would be back in a few days. This is the last we hear of Shinn in connection with this property. There is no evidence in the record, even that the defendant below claimed the property, under a purchase from Shinn, though it is probable that it was so understood at the trial.

The facts above stated, show a transfer of the possession of the property pledged, as much as it was possible to do under the circumstances of the case. Shinn ceased to claim the ownership of the property, which was openly and notoriously claimed by Parsons, who ever after in conjunction with such claim, treated it as his own. If he had not the possession of the mare and harness, then by the same rule, he had not the possession of his horse either. He had the same possession and control of the one as he had of the other. What other transfer of possession was it possible there could be, situated as the parties were, without absolutely breaking up their farming arrangements? Shall we hold that it was impossible for one of these parties to sell and transfer property used in the joint cultivation of this farm to the other, without taking it off the farm altogether; or the seller abandoning the place and going away. Indeed, even this was done in the case before us, before there was any pretense of a claim of right to the property asserted by the defendant below, as derived from Shinn; if we admit that there was such derivation of right. Shinn was gone; arrested under a criminal charge, and so far as we know, has never been on the place since. Parsons returned with the property, and continued to claim and use it as his own, and was in the actual possession and use of it when it was violently taken from him by Gore, and he was driven to this action to regain the possession of it.

Considerable stress is placed in the argument for the defendant below, upon the fact that Shinn at the time of his arrest, told Parsons to take the property and take care of it, and that he would be home in a few days. This it is claimed was an assertion of ownership by Shinn, inconsistent with the claim and possession of Parsons, and not disputed by him. We do not think so. Shinn had a residuary interest in the property, which under the circumstances, justified him in expressing solicitude about it, and enables us to understand the remark, as it was undoubtedly understood by Parsons, as not in the least inconsistent with the claim and possession of the latter.

What has been already said sufficiently disposes of the questions arising on the instructions.

The judgment is reversed and the cause remanded.

*Judgment reversed.*